# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR GOMEZ SALCEDO,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Case No. 1:13-cv-01411-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER DEVELOPMENT OF THE RECORD<br><br>(ECF Nos. 17, 18, 19) |

## I.

## INTRODUCTION

Plaintiff Salvador Gomez Salcedo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from status-post knee partial medial meniscectomy, osteoarthritis, diabetes, hypertension, and affective disorder. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted in part and denied in part; and this action shall be remanded to

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 6, 8.)

1

the Commissioner for further proceedings consistent with this opinion.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for supplemental security income on October 23, 2009 for a period of disability beginning on June 8, 2007. (AR 232.) Plaintiff's application was initially denied on March 24, 2010, and denied upon reconsideration on November 5, 2010. (AR 111-14, 125-29.) Plaintiff requested and received a hearing before Administrative Law Judge Sherrill Carvalho ("the ALJ"). Plaintiff appeared for a hearing on October 4, 2011. (AR 46-75.) On October 27, 2011, the ALJ found that Plaintiff was not disabled. (AR 24-26, 30-39.) The Appeals Council denied Plaintiff's request for review on June 14, 2013. (AR 10-13.)

### A.     Hearing Testimony

Plaintiff testified at the hearing on October 4, 2011, with the assistance of a Spanish language interpreter and was represented by his attorney, Geoffrey Hayden. (AR 48.) Plaintiff attended school through the fifth grade in Mexico. (AR 51.) Plaintiff speaks a little English and is limited in his ability to read English. (AR 51-52.) Plaintiff can understand ten percent of what is printed on a form and can understand seventy percent of spoken English. (AR 52.)

Plaintiff last worked for seven months for a company making springs. (AR 53.) Plaintiff operated machinery and sanded springs. (AR 53.) Plaintiff has also worked on and off as a gardener. (AR 53.) Plaintiff stopped working when he was injured in June 2007 while moving a desk. (AR 53.)

Plaintiff complains of difficulty with his memory and mental illness that causes him to become violent. (AR 54-56.) Plaintiff has controlled diabetes, arthritis, joint pain, left knee pain, and pain that runs from his legs to his back. (AR 57, 60.) Plaintiff takes medication for his diabetes, pain, and mental health issues. (AR 55, 57-58, 61.) Plaintiff experiences side effects from his medication, including headaches, memory problems, constipation, dizziness, impotency, and dry mouth. (AR 60-61.)

Plaintiff testified that he is able to walk two blocks, stand for one hour, and sit for forty minutes. (AR 59.) Plaintiff is unable to climb stairs, has problems with bending, stooping, and

1  squatting, and can lift ten pounds without difficultly.  (AR 59.)  Plaintiff helps around the house
2  by folding laundry, dusting, and washing dishes.  (AR 62.)  Plaintiff spends his time drawing,
3  coloring, watching television, and reading.  (AR 62.)

4        Plaintiff's wife helps him to shower and get dressed.  (AR 62.)  Plaintiff takes the bus for
5  transportation and tries to walk to help his arthritis.  (AR 62.)  Plaintiff uses a cane and also a
6  wheelchair when he needs to go farther than three blocks.  (AR 64.)

7        A vocational expert ("the VE"), Cheryl Chandler, testified at the hearing.  (AR 66-75.)
8  The VE classified Plaintiff's prior work as a grinding job, semi-skilled, medium.  (AR 68.)
9  Plaintiff's gardening work would be classified as unskilled, medium.  (AR 68.)  The ALJ
10 presented a hypothetical of a person of Plaintiff's age, education, and work experience who is
11 able to perform medium work; can frequently balance; occasionally climb ramps, stairs, ladders,
12 ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; must avoid concentrated
13 exposure to hazards such as dangerous machinery an heights; and is able to understand and carry
14 out simple job instructions.  (AR 70.)

15       The VE opined that this individual would not be able to perform Plaintiff's past work.
16 (AR 70.)  The VE opined that this individual would be able to work at a hand-packaging job,
17 light, such as a garment bagger, with a fifty percent reduction for potential hazards that would
18 leave 22,000 jobs in California; production jobs, unskilled light, reduced by fifty percent which
19 would leave 15,000 jobs in California; and laundry job, light, with the reduction for potential
20 hazards leaving 21,000 jobs in California.  (AR 70-71.)

21       The ALJ presented a second hypothetical of a person of Plaintiff's age, education, and
22 work experience who can lift, carry, push, or pull less than ten pounds; who can sit six hours and
23 stand and or walk two hours in an eight hour day; never stoop or crouch; frequently finger, grasp,
24 and handle; and would miss more than four days of work per month with occasional interference
25 with attention and concentration.  (AR 71.)  The VE opined that there are no jobs that this
26 individual could perform.  (AR 71.)

27       Plaintiff's attorney asked the VE if Plaintiff would be able to sit and stand less than two
28 hours if that would place Plaintiff below sedentary.  (AR 73.)  The VE opined that it would be at

1 least sedentary and would be hovering around the edge. (AR 73.) The VE opined that with the
2 wheelchair Plaintiff would be at the sedentary level at his age. (AR 74.)

3     **B.**    **ALJ Findings**

4 The ALJ found that Plaintiff suffered from the following severe impairments: status-post
5 left knee partial medial meniscectomy, osteoarthritis, diabetes, hypertension, and affective
6 disorder. (AR 32.) Plaintiff does not have an impairment or combination of impairments that
7 meets or medically equals the severity of one of the listed impairments. (Id. at 32.) Plaintiff has
8 the residual functional capacity to perform medium work, except that he can frequently balance;
9 occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally stoop, kneel,
10 crouch, and crawl. (AR 33.) Plaintiff must avoid concentrated exposure to hazards such as
11 dangerous machinery and heights and he is mentally able to understand and carry out simple job
12 instructions. (Id. at 33.)

13 Plaintiff is unable to perform any past relevant work and is defined as a younger
14 individual when the application was filed, but was subsequently changed to closely approaching
15 advanced age. (AR 38.) Plaintiff is not able to communicate in English and for that reason is
16 illiterate in English. (Id. at 38.) There are jobs that exist in significant numbers in the national
17 economy which Plaintiff can perform. (Id. at 38.) Petitioner is not disabled as defined in the
18 Social Security Act. (AR 39)

19 **III.**
20 **LEGAL STANDARD**

21 Congress has provided that an individual may obtain judicial review of any final decision
22 of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g).
23 In reviewing findings of fact in respect to the denial of benefits, this court "reviews the
24 Commissioner's final decision for substantial evidence, and the Commissioner's decision will be
25 disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v.
26 Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a
27 scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)
28 (internal quotations and citations omitted). "Substantial evidence is relevant evidence which,

considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

To qualify for disability insurance benefits, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

1  upheld.")

2  **IV.**

3  **DISCUSSION AND ANALYSIS**

4  Plaintiff contends that the decision of the ALJ should be reversed on two grounds: 1) the ALJ erred by failing to have the VE explain the deviation from the Dictionary of Occupational Titles ("DOT") due to Plaintiff's illiteracy; and 2) the ALJ erred by not taking into consideration Dr. Touton's finding that Plaintiff had a semi-sedentary limitation.

**A.  The ALJ Erred by Failing to Have the VE Address Plaintiff's Illiteracy**

Plaintiff alleges that the ALJ erred at Step Five when she found Plaintiff to be illiterate and failed to have the VE explain this deviation from the DOT.  (Pl.'s Opening Brief 5-7, ECF No. 17.)  Plaintiff contends that this was error by the ALJ that requires reversal.  (Id. at 7.)  Defendant counters that the VE's testimony was consistent with the DOT.  (Def.'s Opp. to Pl.'s Opening Brief 7, ECF No. 18.)   Defendant states that Plaintiff does not produce any evidence that the language skill requirement must be satisfied in English, and the jobs identified by the VE only require level-one language development which is the lowest level of language development.  (Id.)  Further, Defendant contends that accepting Plaintiff's assertion that he could not perform level-one language development jobs would be an assertion that he is disabled due to his limitations in communicating in English and this would be illogical and in direct contradiction to the Social Security regulations.  (Id.)  Plaintiff replies that the VE testimony does not show that she was aware of Plaintiff's language capacity. (Reply 4, ECF No. 19.)

At step five the burden shifts to the Commissioner to show that there is other work that exists in the national economy that the claimant is able to perform.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  In determining whether such jobs exist, the ALJ will generally consult the DOT and use the services of a vocational expert.  Light v. Social Sec. Admin., 119F.3d 789, 793 (9th Cir. 1997); 20 C.F.R. § 404.1566(d) and (e).  An ALJ cannot rely on the VE's testimony without inquiring whether it conflicts with the DOT and obtaining a reasonable explanation for any apparent conflict.  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007). However, the failure to inquire is harmless where there is no conflict or if the VE provided

1  sufficient support for the conclusion to justify any potential conflict. <u>Massachi</u>, 486 F.3d at 1154
2  n.19. Evidence that is sufficient to permit a deviation from the DOT may be specific finding of
3  fact as to the claimant's residual functional capacity or inferences that can be drawn from the
4  context of the VE's testimony. <u>Light</u>, 119 F.3d at 793.

5       Plaintiff testified at the hearing that he had worked at a grinding job, which the VE
6  classified as DOT 705.684-026. The general educational development for this job requires a
7  language level of 2. 2 Dictionary of Occupational Titles 690 (4th Ed. 1991). The VE found that
8  Plaintiff would be able to work as a garment bagger, DOT 920.687-018; production worker,
9  DOT 529.685-038; and laundry worker DOT 302.685-010. The general educational
10 development for these occupations requires a language level of 1. 1 Dictionary of Occupational
11 Titles 239, 381 (4th Ed. 1991); 2 Dictionary of Occupational Titles 936 (4th Ed. 1991).

12      All of the jobs that the VE identified at the hearing require a language level of 1. This is
13 the lowest language development contemplated by the DOT. 2 Dictionary of Occupational
14 Titles, App. C—Components of the Definition Trailer, <u>see</u> <u>also</u> <u>Donahue v. Barnhardt</u>, 279 F.3d
15 441, 445 (7th Cir. 2002) ("basic literacy (defined as a vocabulary of 2,500 words, the ability to
16 read about 100 words a minute, and the ability to print simple sentences) is essential for *every*
17 *job in the economy*") (emphasis in original). Defendant argues that Plaintiff had previously
18 worked in a job that required level 2 language development and, therefore, has the ability to
19 perform those jobs identified by the VE. This may be true, but neither the ALJ or the VE
20 addressed this.

21      Plaintiff argues that it is not clear from the VE's testimony that she was aware of
22 Plaintiff's language capacity. However, the VE was present during Plaintiff's testimony in
23 which he was assisted by a Spanish language interpreter. (AR 48.) Further, during his testimony
24 Plaintiff described his ability to read, speak, and understand English. (AR 51-52.) With this
25 knowledge, the VE testified that her testimony was consistent with the DOT. (AR 74-75.)

26      The Social Security regulations recognize that illiteracy is not a disability in and of itself.
27 "While illiteracy or the inability to communicate in English may significantly limit an
28 individual's vocational scope, the primary work functions in the bulk of unskilled work relate to

7

working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(I)  "Thus, the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18–44 even if they are illiterate or unable to communicate in English." Id.

Further, the Code of Federal Regulations states that the inability to speak English may be considered as an educational factor.

> Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor.  Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language.  Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do.  It generally doesn't matter what other language a person may be fluent in.

20 C.F.R §§ 404.1564(b)(5) and 416.964(b)(5).

While illiteracy or the inability to communicate in English do not make an individual disabled, the VE did not explain the impact that Plaintiff's illiteracy would have on his ability to perform the jobs identified.  Having found Plaintiff to be illiterate, the ALJ was required to have the VE explain this deviation from the DOT.  Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).

Accordingly, the ALJ's finding at step five is not supported by substantial evidence and this action shall be remanded for further development of the record to determine the effect of Plaintiff's illiteracy in English on his ability to perform the jobs identified by the VE.

**B.     The ALJ Properly Considered the Opinion of Dr. Touton**

Plaintiff also contends that the ALJ erred by not taking into consideration Dr. Touton's semi-sedentary limitation and his finding that Plaintiff was permanent and stationary.  (ECF No. 17 at 9-10.)  Defendant argues that the ALJ properly considered the medical evidence and was not required to translate Worker's Compensation terms in his decision.  (ECF No. 18 at 9-10.)  Plaintiff replies that the ALJ did not decipher the meaning of "semi-sedentary" work and the passing reference in her opinion is insufficient.  (ECF No. 19 at 5.)

Worker's compensation disability ratings are not controlling in cases decided under the Social Security Act, and terms of art used in the California worker's compensation guidelines are not equivalent to the terminology used in Social Security disability cases. Booth v. Barnhart, 181 F.Supp.2d 1099, 1104 (C.D. Cal. 2002). Under the California worker's compensation guidelines claimants "who cannot perform 'heavy' work may be capable of performing 'light,' 'semi-sedentary,' or 'sedentary' work." Booth, 181 F.Supp.2d at 1104 (citations omitted). These categories are not based on the claimant's strength, but are determined by whether a claimant spends most of the day sitting, walking or standing. Id. at 1104-05. "The categories of work under the Social Security disability scheme are measured quite differently. They are differentiated primarily by step increases in lifting capacities." Id. at 1105. (citations omitted).

The ALJ gave great weight to the findings of Dr. Touton, Plaintiff's treating physician. (AR 35.) In a June 3, 2008 letter, Dr. Touton stated that Plaintiff continued to have some soreness in his knee. (AR 350.) Plaintiff had "evidence of a recurrent or residual tear in the posterior horn of the medical meniscus of the left knee, and is suitable for arthroscopic reexamination and treatment." (AR 350.) The knee was ready for treatment, but Plaintiff was leaving for a trip to Mexico and Dr. Touton stated that it was "not appropriate for him to remain on disability status if surgery is being delayed for purposes of a vacation." (AR 350.) Plaintiff had been approved for semi-sedentary work, but such work was not available. (AR 350.) Dr. Touton noted that Plaintiff is semi-sedentary on December 1, 2008. (AR 352.) In a letter this same date, Dr. Touton notes that:

> Examination of the knee shows no swelling. Range of motion reveals full extension, but flexion causes some resistance and I am not sure we are getting a good measure of capabilities. In fact the resistance seems to be somewhat spotty and may not be valid. Collateral and cruciate stability is normal.

(AR 353.) Dr. Touton recommended an arthroscopic reevaluation of the left knee, but stated "[t]he findings are somewhat varied, however, and it is difficult to be certain that there is significant residual pathology." (AR 354.) Dr. Touton's treatment notes show that Plaintiff continued to be semi-sedentary through February 20, 2009. (AR 373.) On February 20, 2009, Dr. Touton stated that he had recommended Plaintiff have a repeat arthroscopic examination of

the knee because there might be a residual tear which requires additional debridement. (AR 371.)

On June 22, 2009, Dr. Touton notes a change in condition and that Plaintiff has full range of motion in his left knee, no effusion, trace laxity in MCL, and negative McMurray test. (AR 377.) In a letter written that same day, Dr. Touton states that Plaintiff's knee has improved substantially. Dr. Touton finds that "the left knee has settled down once again, such that at present I do not believe there is adequate clinical findings to justify left knee arthroscopy. (AR 378.) Dr. Touton found Plaintiff to be permanent and stationary "with the recommendation that he avoid rough and uneven ground, frequent squatting, climbing, kneeling, and crawling, as well as lifting and carrying of over 50 pounds." (AR 379.)

As stated supra, to qualify for disability insurance benefits, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). While Dr. Touton initially found Plaintiff to be semi-sedentary, on June 22, 2009, he found that Plaintiff's condition had significantly improved. As Defendant argues, Dr. Touton determined Plaintiff was semi-sedentary on a month to month basis. When Dr. Touton found Plaintiff to be permanent and stationary, he found that Plaintiff had improved and no longer included the semi-sedentary limitation. To the extent that Plaintiff appears to be arguing that Dr. Touton unintentionally left out the semi-sedentary restriction, such an interpretation would be internally inconsistent with Dr. Touton's opinion that Plaintiff was capable of frequent squatting, climbing, kneeling, and crawling, as well as lifting and carrying of over 50 pounds.

Plaintiff contends that on September 17, 2009, Dr. Touton saw Plaintiff and noted atrophy of the left thigh and prescribed a cane for Plaintiff to use. However, Dr. Touton noted that the work status section was not applicable as Plaintiff was permanent and stationary. (AR 380.) Dr. Touton did not change his previous opinion that Plaintiff was permanent and stationary based upon the atrophy present in the left thigh. During this visit Plaintiff was

1 prescribed a cane because he complained of difficulty negotiating the steps on the bus. Dr. Touton found normal alignment of the knees, with no signs of swelling or deformity. On palpation, there was slight crepitation with the left knee extension and flexion, and some slight tenderness at the medial joint line with some slight medial collateral ligament laxity. The straight leg maneuver was not clearly positive. Knee reflexes were normal. Dr. Touton found no substantial change. (AR 455.)

Plaintiff had an agreed medical examination by Dr. Otsuka on October 28, 2009. (AR 381-90.) Dr. Otsuka found only that Plaintiff would have the same restrictions identified by Dr. Touton. (AR 389.)

Plaintiff was seen on January 11, 2010. Dr. Touton noted that examination revealed nice appearance of the knees with the left knee being slightly thinner than the right. Straight leg test was negative, the left knee was quite firm and satisfactory, and McMurray's test was negative. (AR 450.) Dr. Touton noted that Plaintiff had some pain issues but did "not see enough pathology in the knee to explain significant pain and actually he is complaining more of pain in the lower back and buttocks than he is in the knee." (AR 454.)

Dr. Touton saw Plaintiff on March 2, 2010. (AR 442.) Plaintiff was examined again on April 20, 2010, and Dr. Touton's findings were unchanged. (AR 441.) On June 1, 2010, Plaintiff saw Dr. Touton and reported no substantial change in his condition. (AR 440.)

The hypothetical which was presented to the VE, that Plaintiff could occasionally climb steps, stairs, ladders and ropes and scaffolds; and occasionally stoop, kneel, crouch, and crawl (AR 70), is more restrictive than the opinion of Dr. Touton that Plaintiff could frequently perform these tasks.

Plaintiff also argues that there is evidence in the record that he has continued to decline, citing the use of a cane and wheelchair and his physical therapy evaluations. However, the ALJ did consider these factors (AR 34, 36, 37), and it is up to the ALJ to resolve the conflicting medical opinions, Andrews, 53 F.3d at 1041. In this instance, the ALJ properly considered the opinion of Dr. Touton and there is substantial evidence in the record to support the residual functional capacity assessment.

# V.

# CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ properly considered the opinion of Plaintiff's treating physician. However the ALJ erred by failing to have the VE address Plaintiff's illiteracy. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED IN PART and DENIED IN PART. The Court REMANDS this action back to the Commissioner for further administrative proceedings consistent with this opinion. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **October 9, 2014**

UNITED STATES MAGISTRATE JUDGE